**Irving E. SKYERS, Plaintiff,**

v.

**The PORT AUTHORITY OF NEW YORK AND NEW JERSEY et al., Defendants.**

**No. 75 Civ. 4751.**

United States District Court,
S. D. New York.

Dec. 28, 1976.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, Jack Greenberg, Deborah Greenberg, New York City, for plaintiff.

Patrick J. Falvey, New York City, for defendants by Arthur P. Berg, Herbert Ouida, New York City, of counsel.

KEVIN THOMAS DUFFY, District Judge.

This action was commenced pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as well as the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1983, and the Fifth and Fourteenth Amendments of the Constitution for declaratory, injunctive and monetary relief as a result of allegedly racially discriminatory treatment. The defendants are the Port Authority of New York and New Jersey (the Port Authority), its Commissioners, and Daniel Hahn, a supervisory employee of the Port Authority assigned to the Engineering Department. Plaintiff is a former employee of the Port Authority who was assigned to the Engineering Department, and who essentially claims that he suffered racial discrimination when, at the end of a one-year leave of absence, promised re-employment was denied him.

On September 23, 1974, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (the EEOC), naming the Port Authority and Daniel Hahn as the discriminating parties.

The EEOC informed him, by letter dated May 30, 1975 (the Determination Letter), that it had not found reasonable cause to believe that the charge was true. The letter stated, *inter alia*, that should plaintiff "wish to pursue this matter further, he may do so by filing a private action in Federal District Court within 90 days of his receipt of Notice of Right to Sue which will be issued by the Department of Justice . . . ." This "Notice of Right to Sue Within 90 Days" (the Notice) was issued by the Department of Justice on June 23, 1975, and was received by plaintiff allegedly on June 30, 1975. The notice informed plaintiff that he had a right to institute a civil action in a district court "within 90 days of [his] receipt of this Notice." Plaintiff thereafter filed the instant suit on September 26, 1975. Taking the plaintiff's allegation concerning the date of receipt of the Notice as true for the purposes of this motion, the filing date was within 90 days of the receipt of the Notice but more than 90 days after receipt of the Determination Letter.

Defendants have moved to dismiss this action on several grounds. They assert that the Title VII claim is barred since it was not brought within the correct 90 day period as required by 42 U.S.C. § 2000e–5(f)(1), and that, in any event, the Commissioners are not appropriate defendants since they were not named in the charge filed with the EEOC. As to the claims based on 42 U.S.C. §§ 1981 and 1983, defendants argue untimeliness, as well, since such claims were not brought within the one year statute of limitations allegedly applicable to suits against the Port Authority. Defendants further contend that the Port Authority is not an appropriate defendant in this type of case since it is not a "person" within the meaning of those sections, and that, finally, the complaint fails to state a cause of action against the Commissioners and Daniel Hahn. Defendants have alternatively moved to require plaintiff to state separately and number his causes of action. Plaintiff has requested leave to amend the complaint to clarify his claim of Fifth and

Fourteenth Amendment violations to recite the jurisdictional predicate of 28 U.S.C. § 1331 and to add the amount in controversy, if necessary.

Because of the impact on EEOC procedures which determination of this motion may involve, the EEOC has requested leave to oppose defendants' motion by submission of a memorandum as *amicus curiae*. Neither party has opposed such submission; EEOC's participation is accepted.

■ Defendants initially contend that, notwithstanding EEOC directives, in a case such as this, in which the EEOC has made a no probable cause determination and dismissed the charge, the running of the 90 day period within which to sue, pursuant to 42 U.S.C. § 2000e–5(f)(1), commences not upon the date of receipt of the Notice, but rather upon the date of receipt of the Determination Letter. Such an interpretation would mandate dismissal of plaintiff's Title VII claim as untimely. In support of this proposition, defendants rely on *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, *mod. on reh.* 520 F.2d 409 (2d Cir. 1975), in which the Court of Appeals held, in actions commencing after May 7, 1975, that the 90 day period is triggered by notice from the EEOC dismissing the charges. *DeMatteis*, however did not involve a governmental agency as a defendant; whether such a defendant would change the result has not been definitively settled. Indeed, this very issue has been the subject of two recent decisions in this district involving the Port Authority as a defendant. In *Brisbane v. Port Authority of New York & New Jersey et al.*, 414 F.Supp. 604 (S.D.N.Y.1976), and *Ramos v. Port Authority of New York & New Jersey*, F.Supp. (76 Civ. 312, June 21, 1976), the Port Authority's motions to dismiss Title VII claims as untimely, in suits which were filed more than 90 days after receipt of Determination Letters but within 90 days of receipt of Notices, were denied. Although *Brisbane* concluded that *DeMatteis* was inapplicable in a suit against a public employer, while *Ramos* viewed *DeMatteis* as controlling, both decisions rested on the respective plaintiff's reasonable reliance on the advice of the EEOC in procedurally prosecuting the claims in the absence of prejudice to the defendant. In light of these decisions, it is unnecessary to reach the question of whether, as defendants assert, *DeMatteis* is dispositive of the instant action. "[T]here can be no little doubt that when, as here, the notice informs the complainant that [he] *cannot* sue until the happening of a future event (receipt of a right to sue letter from the Justice Department), then it does not start the running of the ninety day period." *Brisbane v. Port Authority*, 414 F.Supp. at 608–09. Consequently, plaintiff's suit, filed within 90 days of the Notice, is timely; defendants' motion to dismiss on this ground is denied.

■ Defendants further assert that this Court has no jurisdiction over the Port Authority Commissioners since they were not named by plaintiff in the original complaint filed with the EEOC, as required by 42 U.S.C. § 2000e–5(f)(1).[1] This contention is without merit. The legislation creating the Port Authority states that it "shall consist of twelve commissioners," Cf. *N.Y. Unconsolidated Laws* § 6405 (McKinney 1961), who, among other things, manage the Port Authority and control all employment decisions. Cf. *N.Y. Unconsolidated Laws* §§ 6406, 6415. Notification to the Port Authority of a claim of discrimination is, therefore, notification to the Commissioners; the Commissioners are, in a real sense, the Port Authority itself. As plaintiff correctly points out, the outcome of the cases cited by defendants in support of their position apparently turned on the insufficient connection between the plaintiff and defendants sought to be held; that is, notice of the violation to those defendants unnamed in the EEOC charge was lacking. See *Scott v. University of Delaware*, 385

---

1.  42 U.S.C. § 2000e–5(f)(1) provides that " . . a civil action may be brought against the respondent named in the charge . . . ." spondent named in the charge . . . ."

F.Supp. 937, 942 (D.Del.1974); *Van Hoomissen v. Xerox Corp.*, 368 F.Supp. 829, 834–35 (N.D.Cal.1973). Because of this, such cases are inapposite. In the instant situation, the Commissioners, who are the "directors" of the Port Authority, are in a position where they would or should have had notice of plaintiff's claim.

Defendants' next set of contentions involve the causes of action based on 42 U.S.C. §§ 1981 and 1983. They argue that the applicable statute of limitations on such claims is that applicable under State law (*Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) which, as to Port Authority and its Commissioners, is one year. *Trippe v. Port of New York Authority*, 14 N.Y.2d 119, 123, 249 N.Y.S.2d 409, 198 N.E.2d 585 (1964); *Rao v. Port of New York Authority*, 222 F.2d 362 (2d Cir. 1955); *Tierney v. Byee, et al.*, Civ. No. 597–73, (D.N.J. Feb. 20, 1974). Cf. *McKinney's Unconsolidated Laws*, § 7101, *et seq.* Plaintiff disputes the applicability, under New York law, of a one year period and maintains that *Kaiser* adopts the use of the three year period for suits "to recover upon a liability . . . created or imposed by statute". N.Y.C.P.L.R. 214(2) (McKinney 1972). I need not, however, reach the issue, for I have determined that the action was timely brought regardless of which period of time governs.

■ Although plaintiff was informed on September 12, 1974 that "he could not be reconsidered for reemployment at that time," (Complaint ¶ 10) and a charge of discrimination was filed with the EEOC on September 23, 1974, plaintiff's leave of absence did not officially expire until September 30, 1974 (See Herr Affidavit ¶ 4 and Exhibit C thereto). Notwithstanding the filing of the charge on September 23, the Personnel Department of the Port Authority, at the urging of the EEOC, spoke with plaintiff about the possibility of reemployment in a different position. This "negotiation" apparently indicated the willingness of the Port Authority to consider its previous statement, as well as the filing of charges, as non-final acts. Moreover, the Supreme Court has recognized that the filing of a Title VII charge with the EEOC does not toll the applicable statute of limitations, at least in a § 1981 case. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Therefore, plaintiff's discharge was consummated only when his leave of absence terminated. Since suit was brought within a year of such termination, the action is timely under either limitation period.

Dismissal is urged on behalf of defendant Port Authority on the grounds that the Port Authority cannot be sued under 42 U.S.C. §§ 1981 and 1983 because it is not a "person" within the meaning of those statutes.[2] I will consider each section separately.

Defendant relies on *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) and *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) for the proposition that a municipal corporation is not a "person" as defined in 42 U.S.C. § 1983. Plaintiff contends that the Port Authority is not a municipal corporation but an agency, and thus *Forman v. Community Socs., Inc.*, 500 F.2d 1246 (2d Cir. 1974), *rev'd on other grounds sub nom. United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621

2. 42 U.S.C. § 1981 provides:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and Laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(1975), distinguishing between municipal corporations and agencies for the purposes of suit under § 1983, is controlling. An examination of the nature of the Port Authority indicates that plaintiff's position must be rejected.

■ The Port Authority is regarded in the bi-State governing legislation as "the municipal corporate instrumentality of the two states . . . ." *Cf. McKinney's Unconsolidated Laws* § 6459, and its characterization as a political sub-division has been well recognized. *The Port of N.Y. Authority v. Baker, Watts & Co.*, 129 U.S.App.D.C. 173, 392 F.2d 497, 503 (1968); *C.I.R. v. Shamberg's Estate*, 144 F.2d 998, 1006 (2d Cir. 1944); *Bush Terminal v. City of New York, Port of N.Y. Authority*, 282 N.Y. 306, 319, 26 N.E.2d 269 (1940). Thus plaintiff's § 1983 claim as against the Port Authority must fail.[3]

■ I reach a different result, however, with respect to the § 1981 claim. The applicability of § 1981 to political subdivisions is an open question in this Circuit.[4] Those courts which have been faced with the issue have reached contrary conclusions. One line of cases holds that the term "person" as utilized in 42 U.S.C. § 1983 applies equally to § 1981. *See, e. g., Arunga v. Weldon*, 469 F.2d 675 (9th Cir. 1972); *Redding v. Medica*, 402 F.Supp. 1260 (W.D.Pa.1975); *Black Bros. Combined v. City of Richmond*, 386 F.Supp. 147 (E.D.Va.1974). The apparent reason underlying this view is that "an interpretation of Section 1981 which authorizes damage actions against states and municipalities deprives Section 1983 of its essential significance." *Bennett v. Gravelle*, 323 F.Supp. 203, 215 (D.Md.), aff'd 451 F.2d 1011 (5th Cir. 1971). A second line of cases, however, distinguishes between § 1981 and § 1983 both as to legislative history and statutory language, and concludes that a municipality, however protected from suit under § 1983, is subject nonetheless under § 1981. *See, e. g., Maybanks v. Ingraham, et al.*, 378 F.Supp. 913 (E.D.Pa.1974); *Robinson v. Conlisk, et al.*, 385 F.Supp. 529 (N.D.Ill.1974). I believe that this latter view finds more support in logic and legislative history.

The reference to "persons" contained in § 1981 describes those protected by the statute, and not those proscribed from its violation, as in § 1983. Unlike § 1983, which was rooted in § 1 of the Ku Klux Klan Act of 1871, *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), § 1981, as well as § 1982, were originally derived from § 1 of the Civil Rights Act of 1866. The Supreme Court has recognized the universal application of this section of the 1866 act, which prohibits "interference from any source whatever, whether governmental or private", *Jones v. Mayer Co.*, 392 U.S. 409, 423–24, 88 S.Ct. 2186, 2195, 20 L.Ed.2d 1189 (1968), and has viewed § 1982 as "an 'absolute' bar to all [racial] discrimination, private as well as public, federal as well as state." *District of Columbia v. Carter*, 409 U.S. 418, 422, 93 S.Ct. 602, 605, 34 L.Ed.2d 613 (1973). Because of the common genesis of §§ 1981 and 1982, the common language of these two sections have been consistently construed.[5] *DeMatteis v. Eastman Kodak Co.*, 511 F.2d 306, n. 9 at 312 (2d Cir. 1975)

---

**3.** The claim with regard to the Commissioners acting personally in their official capacity is, however, a cognizable one under § 1983. *Wright v. Chief of Police, et al.*, 527 F.2d 1262 (2d Cir. 1976).

**4.** In *Percy v. Brennan*, 384 F.Supp. 800 (S.D.N.Y.1974), the Court, relying on *City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) and *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), summarily concluded that "The claim against the Department of Labor under 42 U.S.C. § 1981 must be dismissed because a state and its agencies are not 'persons' within the mean-

ing of the Civil Rights Act" 384 F.Supp. at 809. Both *Bruno & Monroe*, however, were § 1983 cases; and the Court of Appeals has held that state agencies are persons within the meaning of § 1983. *Forman v. Community Services, Inc.*, 500 F.2d at 1255.

**5.** 42 U.S.C. § 1982 provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

and cases cited therein. It follows, then, that a municipal corporation can be, and the Port Authority herein is, the proper subject of a § 1981 claim.

Before turning to a consideration of defendants' final contention, it is appropriate at this juncture to determine the contested issue relating to plaintiff's request to amend his complaint to clarify that cause of action premised directly on the Fifth and Fourteenth Amendments of the Constitution, by including a recitation of the jurisdictional predicate of 28 U.S.C. § 1331,[6] and an amount in controversy exceeding $10,-000. Defendant asserts that in view of the Congressional enactment of Title VII, as well as 42 U.S.C. §§ 1981 and 1983, the addition of this remedy would represent an unwarranted invasion of legislative power.

In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that the allegations of Fourth Amendment violations, as a result of actions of federal narcotics agents who searched plaintiff's apartment and arrested him without a warrant or probable cause, stated a cause of action for damages notwithstanding the inapplicability of § 1983 to the case. In so doing, the Court essentially recognized that the Constitution itself affords persons deprived of constitutionally guaranteed rights a claim for damages without regard to any statutorily created causes of action. This case has been broadly construed to apply to any Constitutional violation, not just Fourth Amendment claims, *See* cases cited in *Panzarella v. Boyle*, 406 F.Supp. 787, n. 7 at 792 (D.R.I.1975), and has been invoked in actions asserting additional statutory bases of jurisdiction. *See*, e. g., *Williams v. Brown*, 398 F.Supp. 155 (N.D.Ill.1975);

*Maybanks v. Ingraham*, 378 F.Supp. 913 (E.D.Pa.1974); *Waltenberg v. N.Y.C. Dept. of Corrections*, 376 F.Supp. 41 (S.D.N.Y. 1974).

*Bivens* indicates, however, that certain constitutionally derived claims may be precluded by "special factors counselling hesitation in the absence of affirmative action by Congress." 403 U.S. at 396, 91 S.Ct. at 2005. According to one view, the fact that a defendant is a municipality is such a "special factor," which, if ignored, would deprive § 1983 of significance. *Perzanowski v. Salvio*, 369 F.Supp. 223 (D.Conn.1974). This view is unconvincing.[7]

■ An action founded directly on the Constitution and 28 U.S.C. § 1331 necessitates a $10,000 jurisdictional minimum; one derived from § 1983 requires no fixed amount. Municipal immunity is thus preserved in suits in which damages sought do not exceed $10,000. Moreover, there is an essential difference in the scope of the two predicates. As *Bivens* itself exemplifies, because § 1983 requires state action, the Constitution may afford a direct line of attack in cases in which § 1983 may not be invoked. Just as federal officers are exempted from the reach of § 1983 but included within the bounds of a suit predicated on 28 U.S.C. § 1331, so then are municipalities.

*City of Kenosha v. Bruno*, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973), an action brought against the City of Kenosha, both under § 1983 and the Fourteenth Amendment, lends further support to this conclusion. The Supreme Court held that the City of Kenosha was not subject to suit under § 1983, but it did not rule that the cause of action premised on the Fourteenth Amendment could not be so maintained.

---

6. 28 U.S.C. § 1331 provides in part:
   (a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

7. This issue was the subject of *Brault v. Town of Milton*, 527 F.2d 730 (2d Cir. 1975) in which the Court of Appeals recognized a federal

cause of action for damages against a municipality predicated directly on the Fourteenth Amendment. However, this decision was subsequently granted an *en banc* rehearing, wherein the Court of Appeals dismissed the complaint for failure to state a claim, and found it unnecessary to resolve this constitutional issue. *Brault v. Town of Milton*, 527 F.2d 737 (2d Cir. 1975).

Instead, that portion of the case was remanded to the district court for verification of the jurisdictional amount in controversy under 28 U.S.C. § 1331. This decision clearly implies that 28 U.S.C. § 1331 jurisdiction can be had over municipalities so long as the jurisdictional amount is satisfied.

It is my conclusion, then, that this Court has jurisdiction over plaintiff's Fifth and Fourteenth Amendment claims as against all of the instant defendants. Although the complaint does not specifically allege the existence of the amount in controversy under 28 U.S.C. § 1331, a fair reading of plaintiff's allegations would support the proposition that the requisite amount in controversy has been met. Plaintiff alleges that he was earning $220 a week while employed by the Port Authority (Complaint ¶ 11). At the time this action commenced, more than $10,000 in back pay, which plaintiff seeks in relief, would have accrued. Since defendants have asserted no prejudice in allowing an amendment, plaintiff's request to amend the jurisdiction allegations of his complaint is granted.

Defendants' final contention is that the complaint should be dismissed for failure to state a cause of action against the Commissioners and Daniel Hahn. Precedent tells me that this result should not obtain "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Church v. Hegstrom*, 416 F.2d 449, 450 (2d Cir. 1969). Defendants essentially assert that the Complaint fails to specify the facts which support its general allegations of discrimination.

█ The complaint is somewhat inarticulately drawn but it reveals that as to Hahn, refusal to reemploy plaintiff after his leave of absence represented alleged retaliation for plaintiff's reporting a racially discriminatory remark uttered by a fellow supervisory employee. (Complaint ¶¶ 7, 9, 12). As far as the Commissioners are concerned, it is alleged that plaintiff was refused rehire because of his race. The Commissioners, sued in their representative capacities, are the governing body of the Port Authority who implicitly control the policy as to leaves of absence and hiring carried out by Port Authority employees. Discrimination in rehiring was allegedly a policy for which the Commissioners are responsible. (Complaint ¶¶ 4, 10, 11, 13, 15B). These contentions would be sufficient to withstand the motion for dismissal on the ground presently urged. However, because of the inarticulate nature of the Complaint and because the Complaint fails to directly allege discriminatory motive on the part of Hahn, or a policy linkage between the alleged discrimination and the Commissioners, the motion to dismiss as to these defendants is granted; however, leave to amend the Complaint to additionally reflect the above facts with specificity is also granted. At the time of the filing of such Amended Complaint the dismissal as to these defendants shall be vacated.

Defendants' motion to require plaintiff to separately state and number his causes of action is granted. The motion to dismiss the Complaint is granted to the extent reflected in this opinion. In all other respects it is denied. Plaintiff's motion for leave to amend is granted. Plaintiff shall file his Amended Complaint within 20 days of the filing of this opinion.

This opinion deals solely with the pleadings; there is no intendment to express any views with regard to any proof which may or may not be offered on the merits.

IT IS SO ORDERED.