**Shirley YARBROUGH, Plaintiff,**

v.

**ILLINOIS DEPARTMENT OF MENTAL HEALTH, Defendant.**

**No. 81 C 4485.**

United States District Court,
N. D. Illinois, E. D.

May 12, 1982.

Sidney A. Jones, III, Chicago, Ill., for plaintiff.

Nancy Nimz, Asst. Atty. Gen., State of Illinois, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiff Shirley Yarbrough, brings this action against her former employer, the Illinois Department of Mental Health ("IDMH"), for race discrimination. Yarbrough claims that IDMH subjected her to untrue charges of being late or absent, derogatory remarks, oral and written reprimands, suspensions, constant and continuous surveillance, and retaliatory punishment for complaining of acts of discrimination. IDMH also allegedly berated her in front of patients, family and co-workers, and maintained employment policies that limited employment and promotional opportunities for black employees. Yarbrough claims that IDMH has violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981, 1983 and 1985. She asks that this court enjoin IDMH from engaging in any further discriminatory acts and compel the IDMH to institute a non-discriminatory disciplinary policy. She also asks for compensatory and punitive damages and attorney's fees.

In October 1980, Yarbrough filed a complaint with the Equal Employment Opportunity Commission ("EEOC") charging employment discrimination. She brought her action in this court on August 10, 1981. IDMH asks dismissal of the complaint, claiming that (1) the Eleventh Amendment bars this action against IDMH; (2) IDMH is not a "person" within the meaning of the Civil Rights Acts of 1871; (3) plaintiff has not timely filed this action as required by Title VII; (4) the allegations are conclusory; and (5) the complaint fails to state a cause of action. IDMH filed a brief in support of its motion; the plaintiff has not filed a response.

■■■ Yarbrough does not meet the jurisdictional prerequisites of a Title VII suit. No party can be the subject of a Title VII suit unless he has been previously named in a timely EEOC charge. *Alexander v. Gardner Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). If the EEOC cannot secure a conciliation agreement from the respondent and does not file a civil action, then it will notify the aggrieved person, and within 90 days after notice, the individual may bring a civil action. 42 U.S.C. § 2000e–5(f)(1). The 90-day time limitation is akin to a statute of limitations, *Zipes v. Trans World Airlines*, —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), and failure to bring timely suit will preclude the complainant's cause of action. *Archie v. Chicago Truck Drivers, Helpers and Warehouse Workers Union*, 585 F.2d 210, 214 (7th Cir. 1978). Here, Yarbrough received a Notice of Right to Sue on May 8, 1981, but she did not commence this suit until 94 days later, and therefore did not meet the 90-day time limitation.

■■ Yarbrough also attempts to state a cause of action under 42 U.S.C. §§ 1981, 1983, and 1985. It is clear that she fails to state a conspiracy under § 1985. Indeed, the word "conspiracy" is not even in the complaint. We will not gratuitously find a conspiracy where no allegations support its existence. *Barr v. Hardiman*, Mem.Op., No. 80 C 6867 (N.D.Ill. April 15, 1982), at 12.

■■ The § 1983 claims raise the question of whether a state agency should be considered a "person" for the purposes of § 1983. In *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality can be held liable under § 1983 for unconstitutional actions which "implement or execute a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers," or which constitute a "governmental 'custom' even though such a custom has not received a formal approval through the body's official decision-making channels . . . ." *Id.* 436 U.S. at 690–91, 98 S.Ct. at 2035–36.

In *Monell*, the Court explicitly limited its holding to "local government units which are not considered part of the State for Eleventh Amendment purposes." 436 U.S. at 690 n.54, 98 S.Ct. at 2035 n.54. In its next term, the Court appeared to reject extending *Monell* to allow § 1983 suits against states. In *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 39 L.Ed.2d 358 (1979), the Court held that the Eleventh Amendment did not prohibit a district court from ordering state officials to inform members of a class of applicants for welfare benefits that their federal suit had ended and that there were existing administrative procedures by which they could receive a determination of eligibility for past benefits. In its discussion of the Eleventh Amendment, the Court stated that it was "unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States." *Id.* 99 S.Ct. at 1144. In support of this conclusion, the Court cited *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 56 L.Ed.2d 1114 (1978), in which it held that a § 1983 suit "against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit." 440 U.S. at 341, 99 S.Ct. at 1145 (quoting *id.* 438 U.S. at 782, 98 S.Ct. at 3057). The Court did not expressly hold that a state is not a person for purposes of § 1983, but Justice Brennan in his concurrence believed

that the majority reached exactly that conclusion. 440 U.S. at 350, 99 S.Ct. at 1150. However, because he believed that the Court need not have reached that conclusion in deciding *Quern*, Justice Brennan labeled the majority's determination that a state was not a person under § 1983 as "patently dicta." *Id.*

Since *Quern*, at least one court has adopted an interpretation of *Quern* that allows § 1983 actions against states, *Marrapese v. State of Rhode Island*, 500 F.Supp. 1207, 1210–12 (D.R.I.1980), and a pre-*Quern* decision supported the proposition that state agencies are persons within the meaning of § 1983, *Atchison v. Nelson*, 460 F.Supp. 1102 (D.Wyo.1978). In light of *Quern* and the *Monell* footnote, however, we hold that a state agency cannot be sued under § 1983. *See American Civil Liberties Union v. State of Tennessee*, 496 F.Supp. 218 (M.D.Tenn.1980); *Savage v. Commonwealth of Pennsylvania*, 475 F.Supp. 524, 528–29 (E.D.Pa.1979), *aff'd*, 620 F.2d 289 (3d Cir. 1980); *Bailey v. Ohio State University*, 487 F.Supp. 601, 602–603 (S.D.Ohio 1980).

Even if we were to hold that a state agency is a person within the meaning of § 1983, Yarbrough has not sufficiently alleged an IDMH custom or policy as required under *Monell*. *Barr v. Hardiman, supra*, at 4–8.

■ In support of her § 1981 claim, Yarbrough alleges that IDMH acted to injure her "solely because and on account of her race, said course of conduct not having been directed against white employees by the defendant." Complaint, p. 3, ¶ 11. Yarbrough alleges sufficient facts to support her claim of discrimination. Her litany of grievances is so unusual that it seems unlikely that, if true, there is no discrimination.

Unlike § 1983, § 1981 includes IDMH as a person within its ambit. Section 1981 is not based on the Fourteenth Amendment but on the Thirteenth. *Waters v. Wisconsin Steel Works for International Harvester Co.*, 427 F.2d 476 (7th Cir. 1970), *cert. denied*, 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). Consequently, the extensive analyses of legislative history undertaken by Justices Brennan and Rehnquist in *Monell* and *Quern* are inapposite.

The court in *Skyers v. Port Authority of N. Y. and N. J.*, 431 F.Supp. 79, 83 (S.D.N. Y.1976), in holding that a municipal corporation was a person within the meaning of § 1981, recognized the differences in the derivation of the two statutes:

Unlike § 1983, . . . § 1981 as well as § 1982, were originally derived from § 1 of the Civil Rights Act of 1866. The Supreme Court has recognized the universal application of this section of the 1866 act, which prohibits "interference from any source whatever, whether governmental or private," *Jones v. Mayer Co.*, 392 U.S. 409 [88 S.Ct. 2186, 20 L.Ed.2d 1189] . . . (1968), and has reviewed § 1982 as "an 'absolute' bar to all [racial] discrimination, private as well as public, federal as well as state." *District of Columbia v. Carter*, 409 U.S. 418 [93 S.Ct. 602, 34 L.Ed.2d 613] . . . (1973). Because of the common genesis of §§ 1981 and 1982, the common language of these two sections [sic] have been consistently construed.

■ Although some courts have found state agencies not to be persons within the meaning of § 1981, *see, e.g., Percy v. Brennan*, 384 F.Supp. 800 (S.D.N.Y.1974), those courts relied on § 1983 cases to support their holdings. In light of the different derivations of the statutes and the legislative history of § 1981, we hold that a state agency such as IDMH is a person under § 1981.

*Conclusion*

For the reasons discussed above, we grant IDMH's motion to dismiss as to all but the § 1981 claims.