Barbara S. MALONE, Plaintiff,

v.

Theodore M. SCHENK, Jr., individually and d/b/a Schenk's Tavern; Robert Schenk, individually and as an employee of Schenk's Tavern; Michael J. Jones, individually and as Superintendent of the Illinois State Lottery Division; and the Illinois State Lottery Division, Defendants.

No. 83-3283.

United States District Court,
C.D. Illinois.

Dec. 2, 1985.

George Taseff, Joseph C. Honan, Bloomington, for plaintiff.

Michael D. Boge, Costigan & Wollrab, Bloomington, Ill., for Theodore M. Schenk, Jr.

Carl R. Draper, Asst. Atty. Gen., Springfield, Ill., for Michael J. Jones, Ill. State Lottery.

## ORDER

BAKER, Chief Judge.

This is an action for damages under section 1 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1982). Three of the defendants have moved for summary judgment.

The plaintiff, Barbara J. Malone alleges that on Tuesday, April 5, 1983, she and her brother, along with other black persons, entered Schenk's Tavern in Springfield, Illinois, to purchase Illinois State Lottery tickets for the daily game and the pick four game. The defendant, Theodore M. Schenk, Jr., owns and operates Schenk's Tavern, and the Illinois State Lottery Division (hereinafter referred to as the ISLD) has licensed Theodore Schenk as a sales agent of state lottery tickets. The defendant, Robert Schenk, an employee of the tavern, was tending bar and making lottery ticket sales. The plaintiff presented Robert Schenk with a piece of paper listing various sets of numbers which she and her brother wished to play. Robert Schenk, however, allegedly refused to sell the requested ticket, and ultimately threatened Malone and her brother with arrest if they did not leave the tavern. Malone contends that two of her numbers were chosen that day, and claims the $5,980 in lost prize money as damages. The plaintiff also seeks money damages for the humiliation, pain, and suffering caused by the alleged discrimination, and asks for punitive damages and attorneys fees.

Every defendant except Robert Schenk has moved for summary judgment. Theodore Schenk, the ISLD, and the defendant, Michael J. Jones, individually and as Superintendent of the ISLD, argue that section 1981 does not permit an award of damages on the plaintiff's theory of vicarious liability. The ISLD and Jones in his capacity as Superintendent also argue that they are agents of the State of Illinois, and that therefore the Eleventh Amendment precludes this court from asserting jurisdiction over them for Malone's claims of monetary damages. For the reasons below, the motions will be allowed in part and denied in part.

### I. Vicarious Liability Under Section 1981

The courts have long held that "section 1983 will not support a claim based on a *respondeat superior* theory" of liability. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981). *See also, e.g., Monell v. Department of Social Services*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 65 L.Ed.2d 611 (1978); *Ross v. Reed*, 719 F.2d 689, 698 (4th Cir. 1983); *Glick v. Sargent*, 696 F.2d 413, 414–15 (8th Cir.1983); *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir.1982); *Fulton Market Cold Storage Co. v. Cullerton*, 582 F.2d 1071, 1083 (7th Cir.1978), *cert. denied* 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979); *Adams v. Pate*, 445 F.2d 105, 107 n. 2 (7th Cir.1971). The defendants argue that a similar rule applies to actions under section 1981. In support of their position, the defendants have cited three district court decisions dealing with vicarious liability under section 1981. *Ganguly v. New York State Department of Mental Hygiene*, 511

F.Supp. 420, 424 (S.D.N.Y.1981); *Davis v. Reed,* 462 F.Supp. 410, 413 (W.D.Okla. 1977); and *Boyden v. Troken,* 352 F.Supp. 722, 723 (N.D.Ill.1973). These decisions rely exclusively on an analogy to section 1983 and fail to undertake an analysis of the differences in constitutional authority and legislative history between sections 1981 and 1983.

■ The greater weight of authority in this and other circuits, however, holds that section 1981 does support a claim based on the vicarious liability of an employer for the acts of his agent. *See, e.g., Miller v. Bank of America,* 600 F.2d 211 (9th Cir. 1979) (bank liable under doctrine of *respondeat superior* for actions of supervisor violating section 1981 and the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1982)); *Flowers v. Crouch-Walker Corp.,* 552 F.2d 1277 (7th Cir.1977) (construction company liable under theory of *respondeat superior* for actions of construction site supervisor violating Section 1981); *Haugabrook v. City of Chicago,* 545 F.Supp. 276 (N.D.Ill.1982) (in a very detailed analysis, court held theory of *respondeat superior* applicable to section 1981 actions, rejecting comparison to Section 1983); *Jones v. Local 520, International Union of Operating Engineers,* 524 F.Supp. 487 (S.D.Ill.1981) (construction company liable for hiring agent's violations of section 1981). Most significantly, the United States Supreme Court indicated its agreement with this circuit on this question in *General Building Contractors Association, Inc. v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982). The Court reversed the district court's finding that an association of construction industry employers were vicariously liable for the acts of a union hiring hall which violated section 1981. The Supreme Court reversed because the facts did not establish the existence of an agency relationship between the union and the trade association. However, Justice O'Connor noted in her concurring opinion that such liability would be possible if an agency relationship could be established. She stated:

Nothing in the court's opinion prevents the respondents from litigating the question of the employer's liability under § 1981 by attempting to prove the traditional elements of *respondeat superior.* 458 U.S. at 404, 102 S.Ct. at 3157.

■ This court is persuaded by the greater weight of authority that vicarious liability exists under section 1981. Clearly then, under section 1981, Theodore Schenk is liable for the acts of his employee, Robert Schenk. Furthermore, because no fundamental legal distinction exists between the liability of an employer for acts of an employee and the liability of a principal for acts of an agent, 53 *Am.Jur.2d,* Master and Servant, 23 (1970), both ISLD and the defendant Jones in his official capacity may also be vicariously liable.

Theodore Schenk and the state defendants also argue that even if section 1981 imposes vicarious liability upon them, the facts of the case preclude liability as a matter of law. These defendants argue if Robert Schenk actually refused to sell the plaintiff lottery tickets because of her race, such a refusal was not within the scope of his authority. In support of their theory, the defendants rely solely upon Illinois law.

Research does not reveal any section 1981 cases addressing the scope of an agent's authority. Numerous courts, however, have confronted this issue in suits under section 1982, a statute prohibiting discrimination in the sale or lease of property. Uniformly, the courts have held the principal liable for the agent's refusal to rent or sell because of race. *See, e.g., Hobson v. George Humphreys, Inc.,* 563 F.Supp. 344, 352 (W.D.Tenn.1982) (owner of property vicariously liable under section 1982 for real estate agent's discriminatory refusal to sell property); *Izard v. Arndt,* 483 F.Supp. 261, 263 (E.D.Wis.1980) (co-owner of property vicariously liable under section 1982 for his co-owner/agent's discriminatory refusal to lease property); *Williamson v. Hampton Management Co.,* 339 F.Supp. 1146 (N.D.Ill.1972) (property management corporation vicariously liable under section 1982 for rental agent's dis-

criminatory refusal to rent); *accord Martin v. John C. Bowers & Co.*, 334 F.Supp. 5 (N.D.Ill.1971). *See also Marr v. Rife*, 503 F.2d 735, 740 (6th Cir.1974) (real estate broker vicariously liable under both section 1982 and the Fair Housing Act of 1968, 42 U.S.C. §§ 3601–3612, for his agent's discriminatory refusal to sell); *accord Bradley v. John M. Brabham Agency, Inc.*, 463 F.Supp. 27 (D.C.S.C.1978). In each case the court rejected the argument raised here that refusal to sell or lease because of race was outside the scope of the agent's authority. Because Congress originally enacted both section 1981 and section 1982 as parts of the Civil Rights Act of 1866, 14 Stat. 27 (1866), the Supreme Court has consistently relied upon a common legislative history to construe the two statutes similarly. *See Runyon v. McCrary*, 427 U.S. 160, 169–74, 96 S.Ct. 2586, 2594–96, 49 L.Ed.2d 415 (1976); *Tillman v. Wheaton-Haven Recreation Association*, 410 U.S. 431, 439–40, 93 S.Ct. 1090, 1094–95, 35 L.Ed.2d 403 (1973). Nothing in the legislative history indicates that section 1981 precludes holding employers vicariously liable for the acts of their employees. Therefore, all other defendants may be liable for Robert Schenk's acts if he refused to sell Malone a lottery ticket because of her race.

## II. Congressional Abrogation of the Eleventh Amendment Issue

■ The defendants ISLD and Jones in his capacity as Superintendent argue that because the plaintiff only seeks money damages, the Eleventh Amendment bars her claim. The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state.

This amendment protects the traditional concept of a state's sovereign immunity in the federal system. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67

(1984). Although not clearly expressed in the language of the amendment, the Supreme Court has held that the amendment bars a citizen from bringing a suit in federal court against the citizen's own state. *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed.2d 842 (1890). It does not bar a citizen from bringing suit in state court.

■ The thrust of the defendant's argument is ISLD does not have an existence separate from the State of Illinois, and that any damage claim paid to the plaintiff would come out of the Illinois Treasury. The plaintiff responds first, that ISLD is distinguishable from other state agencies protected by the Eleventh Amendment, and second, that the language of section 1981 permits damage awards against a State. The short answer to the first point is that ISLD is a state agency. The governing Illinois statute provides:

All income arising out of any activity or purpose of the Division of the State Lottery in the Department of Revenue shall pursuant to "an Act in relation to State Finance", approved June 10, 1919, as amended, be paid into the State Treasury.

This plaintiff's second argument is based upon the proposition that Congress, exercising its powers under the Thirteenth Amendment, overrode Eleventh Amendment immunity by enacting section 1981.

■ The Supreme Court has recognized two exceptions to the general prohibition of citizen suits against a state. First, a State may consent to suit in federal court, thereby waiving its immunity. *See, e.g., Clark v. Barnard*, 108 U.S. 436, 438, 25 S.Ct. 878, 879, 27 L.Ed.2d 780 (1883). Second, Congress may abrogate a state's Eleventh Amendment immunity by legislation pursuant to one of Congress' plenary powers under the United States Constitution. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Fourteenth Amendment); *Parden v. Terminal Ry. of Alabama*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) (Commerce Clause). *See also Jennings v. Illinois Office of Education*, 589 F.2d 935 (7th Cir.), *cert. de-*

*nied,* 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979) (War Powers). Before a court will recognize the abrogation of state immunity, however, Congress must show with an "unequivocal expression" that it intended to override the traditional immunity of the State from damage claims. *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907. The language of the statute, *Atascadero State Hospital v. Scanlon,* — U.S. —, —, 105 S.Ct. 3142, 3148, 87 L.Ed.2d 171 (1985), and the statute's legislative history, *Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1979), should be examined to the determine Congressional intent.

### A. Statutory Construction of Section 1981

Section 1981 and section 1982 were originally enacted as section 1 of the Civil Rights Act of 1866, 14 Stat. 27 (1866). Because of the "historical interrelationship" between the two statutes, the Supreme Court has given similar interpretations to their meaning and application. *Tillman v. Wheaton-Haven Recreation Association,* 410 U.S. 431, 439–40, 93 S.Ct. 1090, 1094–95, 35 L.Ed.2d 403 (1973). Unlike most civil rights statutes, both sections 1981 and 1982 affirm the rights of persons as citizens rather than proscribe particular conduct. The entire text of sections 1981 and 1982 reads:

§ 1981

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

§ 1982

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

42 U.S.C. §§ 1981 and 1982 (1976).

The Supreme Court has interpreted the language of section 1982 as creating "an 'absolute' bar to all discrimination, private as well as public, federal as well as state." *District of Columbia v. Carter,* 409 U.S. 418, 422, 93 S.Ct. 602, 605, 34 L.Ed.2d 613 (1973). *See also Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 423–24, 88 S.Ct. 2186, 2194–95, 20 L.Ed.2d 1189 (1968) ("Thus, when Congress provided in § 1 of the Civil Rights Act that the right to purchase and lease property was to be enjoyed equally throughout the United States by Negro and white citizens alike, it plainly meant to secure that right against interference from any source whatever, whether governmental or private."). This language suggests the conclusion that states should be subject to suit in federal court for violations of both sections 1981 and 1982 in order to enforce the bar against discrimination by the states. Indeed, until the Supreme Court's decision in *Jones v. Alfred H. Mayer Co.,* the consistent assumption by the Court was that sections 1981 and 1982 applied *only* to state action. *See Hurd v. Hodge,* 334 U.S. 24, 31, 68 S.Ct. 847, 851, 92 L.Ed.2d 1187 (1948) (governmental action was the focus of the predecessor to the current section 1981); *Civil Rights Cases,* 109 U.S. 3, 16–17, 3 S.Ct. 18, 24–26, 27 L.Ed.2d 835 (1883) (governmental action was the focus of the predecessor to the current section 1981). It does not seem likely that Congress would have passed these protections against state acts of discrimination only to leave the enforcement of them to state courts.

The Supreme Court, however, recently discussed Congressional abrogation of Eleventh Amendment immunity in *Atascadero State Hospital v. Scanlon,* — U.S. —, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). In *Atascadero,* the Court ruled in a 5–4 decision that a federal statute [1] relating to

---

**1.** "No otherwise qualified handicapped individu-   al in the United States, as defined in section

the funding of employment positions for the handicapped did *not* abrogate California's Eleventh Amendment immunity to suit in federal court. Speaking of Congress' power to override the Eleventh Amendment, the Court said: "We ... affirm that Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." —— U.S. ——, 105 S.Ct. at 3147. While the language of section 1981 clearly seems to interdict state actions[2] it does not satisfy *Atascadero*'s demand, "that Congress must express its intention to abrogate the Eleventh Amendment in unmistakeable language in the statute itself." *Id.* at ——, 105 S.Ct. at 3148.

### B. Legislative History of Section 1981

The legislative history of section 1981 supports the contention that states may be sued in federal court for violations of the statute. "The principal object of ... [the Civil Rights Act of 1866] was to eradicate the Black Codes, laws enacted by Southern legislatures imposing a range of civil disabilities on freedmen." *General Building Contractors Association v. Pennsylvania,* 458 U.S. 375, 386, 102 S.Ct. 3141, 3147, 73 L.Ed.2d 835 (1982). The sponsor of the 1866 legislation, Senator Trumbill of Illinois, made this statement about the primary aims of his legislation:

> Since the abolition of slavery, the Legislatures which have assembled in the insurrectionary States have passed laws relating to the freedmen, and in nearly all the States they have discriminated against them. They deny them certain rights, subject them to severe penalties, and still impose upon them the very restrictions which were imposed upon them in consequence of the existence of slavery, and before it was abolished. The purpose of the bill under consideration is to destroy all these discriminations, and to carry into effect the [Thirteenth] amendment.

458 U.S. at 378, 102 S.Ct. at 3143 (quoting from Cong. Globe, 39th Cong., 1st Sess., 474 (1866)). *See also Jones,* 392 U.S. at 432-35, 88 S.Ct. at 2199-2201. It seems clear from Senator Trumbill's remarks and other legislative history that Congress fully intended to reach the governmental acts of the states with the Civil Rights Act of 1866. The legislative history and the language of the statute show no intent to treat states differently from other violators of the statute. But the requirement of *Atascadero State Hospital v. Scanlon,* —— U.S. ——, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985), is that the statute in its language unmistakably abrogate the State's Eleventh Amendment immunity. Section 1981 does not do that.[3]

706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity *receiving Federal financial assistance* or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794 (emphasis added).

**2.** "All persons ... shall have the same right in every state or territory ... to the full and equal benefit of all the laws and proceedings ... as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981 (1982).

**3.** When Congress enacted the Civil Rights Act of 1866 pursuant to the power conferred upon it by the Thirteenth Amendment, it certainly had the power to abrogate state immunity. *See Jones v. Alfred H. Mayer Co.,* 392 U.S. at 437-44,

88 S.Ct. at 2202-06. Although the Supreme Court has not explicitly ruled on Congressional authority to abrogate state immunity under the Thirteenth Amendment, the Court has long held that the substantive provisions of the Thirteenth Amendment apply to state action. *See District of Columbia v. Carter,* 409 U.S. 418, 421-22, 93 S.Ct. 602, 604-05, 34 L.Ed.2d 613 (1973); *Jones,* 392 U.S. 409, 438, 88 S.Ct. 2186, 2202, 20 L.Ed.2d 1189; *Civil Rights Cases,* 109 U.S. 3, 20, 35 S.Ct. 18, 27, 27 L.Ed.2d 835; *Ex Parte Virginia,* 10 Otto 339, 344-45, 100 U.S. 339, 344-45, 25 L.Ed.2d 676 (1879). The enforcement provision of the Thirteenth Amendment is virtually identical to that of the Fourteenth Amendment which has "provide[d] for private suits against States or state officials which are constitutionally impermissible in other contexts." *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). Congress has similar authority under Section 2 of the Thirteenth

Other district courts that have considered the "quite different language and history of Section 1981," *United States v. City of Chicago*, 549 F.2d 415, 425 n. 9 (7th Cir.1977), have concluded that the state is subject to suit in federal court pursuant to section 1981. In *Yarbrough v. Illinois Department of Mental Health*, 538 F.Supp. 414 (N.D.Ill.1982), Judge Grady held that despite Illinois' immunity from suit under section 1983, neither the State nor its departments were immune from suit under section 1981. Judge Grady first noted that unlike section 1983, section 1981 is based on the Thirteenth Amendment, and, therefore, the Supreme Court decisions in *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), and *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), were inapplicable. In *Yarbrough*, Judge Grady noted:

> Unlike § 1983, ... § 1981 as well as § 1982, were originally derived from § 1 of the Civil Rights Act of 1866. The Supreme Court has recognized the universal application of this section of the 1866 act, which prohibits "interference from any source whatever, whether governmental or private," *Jones v. Mayer Co.*, 392 U.S. 409 [, 88 S.Ct. 2186, 20 L.Ed.2d 1189] (1968), and has viewed § 1982 as "an 'absolute' bar to all [racial] discrimination, private as well as public, federal as well as state."

538 F.Supp. at 417 (quoting *District of Columbia v. Carter*, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973) and *Skyers v. Port Authority of New York and New Jersey*, 431 F.Supp. 79, 83 (S.D.N.Y.1976)) (citations omitted). Judge Grady noted authority to the contrary, but found it unpersuasive because of its reliance on section 1983 case law. *Id.* The *Skyers* court draws a similar conclusion. 431 F.Supp. 79. These results, however, are implicitly disapproved by the holding in *Atascadero*.

Inasmuch as this court must follow the holding of *Astacadero*, it is compelled to the conclusion that section 1981 does not abrogate Illinois' Eleventh Amendment immunity from suit in federal court.

### III. Jones' Individual Liability

Jones also argues that no individual liability can be imposed upon him because he had no personal involvement in the events that give rise to the claim. This is a meritorious argument. In *General Building Contractors Association*, the Supreme Court held that to establish a claim under Section 1981, the plaintiff must show intentional discrimination. 458 U.S. at 382–91, 102 S.Ct. at 3145–50. This court has already found that Jones may be vicariously liable in his official capacity for the acts of his state lottery tickets sales agent. As an individual, however, Jones has no authority to license or authorize the sale of state lottery tickets. Schenk's alleged intentional acts of discrimination may be imputed to the ISLD and to Jones as an official of ISLD through the doctrine of *respondeat superior*, but the doctrine does not reach Jones in his individual capacity. The plaintiff cannot show any intentional discrimination by Jones. Summary judgment should be granted to Jones as an individual.

IT IS THEREFORE ORDERED that the motions for summary judgment by the defendant Theodore Schenk, Jr., is denied. The motions for summary judgment by the defendants ISLD and Jones individually and as Superintendent of ISLD are allowed.

The Clerk is directed to enter judgments in accordance with this order.

---

Amendment. Therefore, Congress had the authority to override the State's immunity under the Eleventh Amendment when it enacted the

Civil Rights Act of 1866. *Atascadero* says that because the statute does not say so specifically, the State's immunity is not overridden.