Serge FRANCOIS, Plaintiff,

v.

OFFICE OF MENTAL HEALTH OF THE STATE of New York, BRONX PSYCHIATRIC CENTER, Defendant.

No. 87 Civ. 7976 (RWS).

United States District Court, S.D. New York.

May 26, 1989.

---

Marc S. Krieg, P.C., Dix Hills, N.Y., for plaintiff.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for defendant; Thomas P. Dorsey, Asst. Atty. Gen., of counsel.

SWEET, District Judge.

Defendant Office of Mental Health of the State of New York, Bronx Psychiatric Center (the "Bronx Center") has moved pursuant to Fed.R.Civ.P. 56(b) for summary judgment to dismiss the complaint of

plaintiff Serge Francois ("Francois") which seeks injunctive relief requiring the Bronx Center to eliminate alleged discriminatory conditions and to provide him with promotional opportunities as well as monetary damages for pain and suffering. For the reasons set forth below, defendant's summary judgment motion of the Bronx Center is granted.

*The Parties*

The Bronx Center is a psychiatric facility operated by the New York State Office of Mental Health.

Francois is a 51 year old black American who has been a citizen of the United States since 1973. He is currently, and has been employed since 1976, at the Bronx Center under the title of Clinical Physician I.

*The Facts*

Francois was born in Haiti and received a medical degree from the Faculte of Medicine and Pharmacy of Haiti in July, 1963. After finishing an internship and some years of government service in Haiti, he completed several residencies in pediatrics and anatomical and clinical pathology, ending in July 1970 with a residency in general and anatomical as well as clinical pathology at the Bronx–Lebanon Hospital in New York. Francois became a licensed physician in New York in October, 1971 and was certified by the American College of Pathology in anatomical and clinical pathology in May of 1973.

The Bronx Center is one of 34 facilities of the State of Office of Mental Health. In March 1976 Francois began working at the Bronx Center as a Clinical Physician I. Defendants allege that he was informed at that time that he could not be placed in a higher position because his specialty of pathology was excluded from the Civil Service requirements for the Medical Specialist lines.

In 1977 Francois applied to Dr. Rapp, a caucasian, who was the Chief of the Medicine Department at that time, for a promotion to the position of Medical Specialist II. The Medical Specialist title paid approximately $20,000.00 more per year than did the Clinical Physician title. Francois alleges that although Dr. Rapp told him he was overqualified, his application was denied on grounds that his pathology certification was excluded from the Medical Specialist qualification.

In 1978 the Office of Mental Health had issued an "Administrative Memorandum 78–2" ("Memorandum 78–2") which excluded the specialties of psychiatry and pathology from meeting the minimum qualifications for appointment to the position of Medical Specialist I or II. Defendants allege without contradiction that while notification of this exclusion was omitted from the civil service examination announcement for some period between 1974 and 1980, Memorandum 78–2 was never rescinded, and the policy continues to be in effect.

The Bronx Center has submitted a memorandum dated March 24, 1986 from a Personnel Administrative trainee to the Director of Personnel stating that the N.Y.S. Department of Civil Service stated the policy of excluding Psychiatry and Pathology from the recognized disciplines of the Medical Specialist II title dating back to January 2, 1974. The reason given for this exclusion was that each of these disciplines has its own line of promotion.

However, Francois has alleged without contradiction that the Civil Service notices state the only criterion needed for qualification to the Medical Specialist title was to be a licensed New York State physician and that he performed the same duties and was given the same work assignments as Medical Specialist II physicians. He also contends, and it is conceded, that, contrary to the alleged policy, five facilities have appointed seven non black New York State physicians who are board certified in pathology only to the position of Medical Specialist II. Under Mental Hygiene Law 7.21(a) the executive directors of the facilities have the power to hire and fire, and the hiring of these seven physicians concededly conflicts with Memorandum 78–2.

Francois applied two more times for promotions to Medical Specialist II in 1978 and 1985. Each time his request was denied.

*Prior Proceedings*

On December 12, 1985, Francois filed a charge of employment discrimination with

the Equal Employment Opportunity Commission ("EEOC"). On September 4, 1987 he obtained a Notice of Right to Sue and on November 9, 1987 Francois sued the Bronx Center for injunctive relief and monetary damages alleging employment discrimination in violation of Title VII and 42 U.S.C. § 1981.

On January 24, 1989, defendant brought the current motion. Oral argument was heard and this motion was considered fully submitted on February 3, 1989.

*Standard for Summary Judgment*

Summary judgment is authorized if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *See id.* at 247–48, 106 S.Ct. at 2509–10; *Corselli v. Coughlin,* 842 F.2d 23 (2d Cir.1988). All doubts are resolved against the moving party, and all favorable inferences are drawn in favor of the party against whom summary judgment is sought. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir. 1985), *cert. denied,* —— U.S. ——, 108 S.Ct. 269, 98 L.Ed.2d 226 (1988); 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2727 (1983). The Supreme Court recently has made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

*Damages and Injunctive Relief Actions*

■ The Eleventh Amendment bars Francois' § 1981 claims for damages and injunctive relief against the Bronx Center absent state consent. *See Daisernia v. State of New York,* 582 F.Supp. 792, 1172 (N.D.N.Y.1984) (§ 1981 not intended to abrogate 11th Amendment immunity anymore than § 1983, which Supreme Court determined does not abrogate 11th Amendment immunity); *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984). Nor can Francois sue the Bronx Center as a "person" under 42 U.S.C. § 1981. *See Daisernia,* 582 F.Supp. 792 at 1172. Francois may only seek prospective injunctive relief, *i.e.,* enjoining the Bronx Center to subsequently conform their conduct to that required by the Constitution under § 1981. *Id.; Edelman v. Jordan,* 415 U.S. 651, 667–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1973).

However, pursuant to its authority under the 14th Amendment, Congress has authorized actions under Title VII against the states and state agencies as employers, thereby abrogating the state's Eleventh Amendment immunity from suit. 1972 Amendment to Pub.L. 92–261 § 2(1)(a). The Supreme Court has held that the threshold fact of congressional authorization to abrogate Eleventh Amendment immunity is clearly present in a Title VII case. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 452, 96 S.Ct. 2666, 2669, 49 L.Ed.2d 614 (1976); *Quern v. Jordan,* 440 U.S. 332, 344, 99 S.Ct. 1139, 1147, 59 L.Ed.2d 358 (1978). Thus Francois may pursue his Title VII claim against the Bronx Center.

Finally, both parties agree that the Seventh Amendment bars Francois's request for a jury trial.

*Elements of the Title VII Action*

■ In a Title VII action, the plaintiff bears the burden of establishing a *prima facie* showing of discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981); *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 919 (2d Cir.1981). Direct, circumstantial or statistical evidence may be used to make the *prima facie* case. *Haskell v.*

*Kaman Corp.*, 743 F.2d 113, 119 (2d Cir. 1984). The plaintiff must show four elements: (1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualification, he was rejected, and (4) that, after his rejection, the employer continued to seek applicants from persons of complainant's qualification. *McDonnell–Douglas*, 411 U.S. 792 at 802, 93 S.Ct. 1817 at 1824. Establishment of a *prima facie* case gives rise to a rebuttable presumption of unlawful discrimination. *Burdine*, 450 U.S. 248 at 254, 101 S.Ct. 1089 at 1094.

■ Once the *prima facie* case has been made, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's rejection. Although the defendant need not show this was the true reason for the employment decision "it may avoid liability only by proving that it would have made the same decision even if it had not allowed [race] to play such a role." *Price–Waterhouse v. Hopkins*, — U.S. —, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268. The employee may then show that the employer's stated reason was in fact pretext. *McDonnell–Douglas*, 411 U.S. 792 at 802, 93 S.Ct. 1817 at 1824. A plaintiff may show pretext by proving either that the employer was more likely motivated by a discriminatory reason or that the proffered explanation is not credible. *Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393 at 1396. This allocation of the burden of proof has consistently been upheld by the Supreme Court. *See Burdine*, 450 U.S. 248 at 256–57, 101 S.Ct. 1089 at 1095–96; *Price–Waterhouse v. Ann B. Hopkins*, — U.S. —, 109 S.Ct. 1775, 1787–88, 104 L.Ed.2d 268 (1989).

■ In deciding a summary judgment motion in an employment discrimination case, the absence of direct or explicit evidence that a challenged personnel action was motivated by race is not fatal to a claim of race discrimination. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). A showing that a proffered justification is pretextual is itself sufficient to support an inference that the employer intentionally discriminated. *See e.g., Duffy v. Wheeling Pittsburgh Steel Corp.*, 738 F.2d 1393, 1396 (3d Cir.1984), *cert. denied*, 469 U.S. 1087, 105 S.Ct. 592, 83 L.Ed.2d 702 (1984). Further, the plaintiff is not required to prove that the employer's proffered reasons are false but only that they were not the only reasons and that race made a difference. *See Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 82 (2d Cir. 1983); *Robinson v. 12 Lofts Realty, Inc.*, 610 F.2d 1032, 1042 (2d Cir.1979); *Pico v. Board of Education, Island Trees Union Free School District*, 638 F.2d 404, 437 (2d Cir.1980) (Newman, J., concurring in the result), *aff'd*, 457 U.S. 853, 102 S.Ct. 2799, 73 L.Ed.2d 435 (1982).

*Qualification*

■ As a black man, Francois has proved the first element of the *prima facie* case. However, he is unable to prove the remaining elements because he cannot prove that he is qualified for the promotion under Memorandum 78–2. The Office of Mental Health in the Bronx has maintained a policy excluding the specialty of pathology from the minimum requirements for promotion to Medical Specialist II. The Memorandum 78–2 establishes that there is a policy of excluding pathologists from promotion to the title of Medical Specialist II. However, Francois relies on the nonconforming promotion of seven non black doctors with degrees only in pathology in five other centers to illustrate the discriminatory manner in which the policy is enforced.

However, the thirty-four centers of the Office of Mental Health are each independent facilities within the office. The independent hiring and firing of each of the centers demonstrates that each is responsible only for the effects of their own enforced policy. The fact that other centers might not enforce Memorandum 78–2 does not affirmatively establish the qualifications of Francois.

Francois must show that the Bronx Center applied the policy discriminatorily against blacks. However, Francois has not done so. He presents no evidence that

there were any individuals promoted to Medical Specialist II in the Bronx Center who held only a pathology certificate. Under the policy standard, Francois was not sufficiently qualified for a promotion to Medical Specialist II. Therefore, he cannot make a *prima facie* case of employment discrimination.

Even if it is assumed that Francois is qualified for the title of Medical Specialist by the actions of five of the other facilities and therefore has established a *prima facie* case, no facts have been presented to demonstrate that enforcement of Memorandum 78–2, the basis upon which Francois was denied promotion, was in fact a pretext. The Bronx Center has articulated a "legitimate, nondiscriminatory reason" for its policy: those doctors with specialties only in pathology and psychiatry have their own promotional lines. Further the Bronx Center has not been shown to have violated Memorandum 78.2 and no evidence has been presented that its reliance upon the Memorandum is pretextual. Even if a *prima facie* case is assumed and presumption of discrimination is thus created, Francois has not adequately established the issue of whether or not the invocation of Memorandum 78–2 was pretextual. Francois has not discredited the promotional tracking explanation and has advanced no evidence to establish pretext.

For the reasons set forth above, the Bronx Center's summary judgment motion is granted. The complaint is dismissed in its entirety.

It is so ordered.